**In re Laurence D. BOYER, Rosemary J. Boyer, Debtors.**

**Bankruptcy No. 81–00662.**

United States Bankruptcy Court, N.D. New York.

Aug. 11, 1988.

Laurence D. Boyer, Oswego, N.Y., pro se.

Grass, Balanoff, Costa & Whitelaw, P.C., Syracuse, N.Y. (Mary Lannon Fangio, of counsel), for trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This matter came before the Court on the removal petition of Laurence D. Boyer and Rosemary J. Boyer ("Debtors"). Oral argument was conducted in Syracuse, New York on February 16, 1988 where the Debtors proceeded pro se.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over this core proceeding pursuant to 28 U.S.C.A. §§ 1334(b) and 157(a), (b)(1) and (2)(A),(E) and (O) (West 1976 & Supp.1988). The following Memorandum–Decision constitutes findings of fact and conclusions of law, as governed by Rules 7052, 9014 and 9027 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.").

## FACTS

On May 6, 1981, the Debtors filed a voluntary business petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1979 & Supp.1988) ("Code") in the Northern District of New York. By Order filed May 12, 1981, Michael J. Balanoff, Esq. was appointed trustee. At the same time, a probate action, *In re Aldula A. Boyer*, 78–P–58, was pending in the twenty-seventh judicial district of the District Court of Reno County, Kansas, initiated by the admittance into probate on March 27, 1978 of the Will of Debtor Laurence Boyer's ("Boyer") mother. The probate case concerned the distribution of the monies of Boyer's mother's estate, in which Boyer was an heir at law as one of her five children.

Additionally, Boyer had claimed an individual interest in his mother's estate through a purported deed to her residence and also filed two claims as the trustee of a "Special Appointment Fund, Northern Illinois Conference, United Methodist Church" from which monies in the amount of approximately $22,000.00 were allegedly loaned to his parents from 1958 to 1978 for their subsistence and then secured by mortgages on their residence. He also claimed that his one-fifth individual interest had been assigned pre-petition to the Special Appointment Fund. In the course of the probate proceedings, the District Court of Reno County, Kansas, admitted into evidence the original purported deed which had been marked void by Aldula Boyer and disallowed the two claims. By letter dated October 30, 1981, the attorneys representing the Aldula Boyer estate contacted the Chapter 7 Trustee and informed him that it appeared as if he was the proper party plaintiff in the probate action and any related causes of action.

In an Order dated May 21, 1982, the Court approved the Trustee's application for appointment of local counsel, Richard A. Benjes, Esq. ("Benjes"), "to handle estate problems caused by the debtor Laurence D. Boyer, regarding the estates of Aldula A. Boyer and/or Charles C. Boyer." In an Order entered September 23, 1983,

the Honorable David L. Brown, Associate District Judge of Reno County, Kansas, granted the Trustee's petition for substitution in Boyer's individual status as a party having an interest in the Aldula Boyer estate from the date of the bankruptcy filing and overruled Boyer's objections.

Judge Brown also found that to the extent that Boyer's assignment on June 16, 1969 of his right of inheritance to the United Methodist Church, Northern Illinois Conference ("NIC–UMC"), was legally effective, said church was the real party in interest and was to be substituted in place of Boyer as Trustee. He ruled that the distributive rights of the Trustee and the NIC–UMC would be decided at final settlement and that Boyer had no further standing, in a trustee or individual capacity. In a subsequent Order, entered November 16, 1983, denying Boyer's motion for modification of the September 23, 1983 Order, Judge Brown directed the attorneys for the co-executors to immediately serve notice of his ruling on an agent of the NIC–UMC.

In a final settlement of case 78–P–58 dated July 25, 1985 in the Reno County District Court, the Honorable Janice P. Long found that Boyer's one-fifth interest was held solely by him individually as an heir of his mother and that this interest was property of the bankruptcy estate. Judge Long ruled that the assignment to the trust was null because the trust was invalid: the underlying Special Appointment Fund was void in not being recognized by NIC–UMC, who had also renounced any interest in said fund. The record indicates that Benjes anticipated his services to include a simultaneous entry of appearance and dismissal of all pending appeals of the probate action and other related proceedings upon his appointment by the Court. Letter from Stephen A. Benjes, Esq. to Michael J. Balanoff, Esq. (May 6, 1982). Boyer's individual appeal to the Kansas Court of Appeals was dismissed for lack of jurisdiction upon his failure to file a bond. *In The Matter of The Estate of Aldula A. Boyer, Deceased,* No. 58,634 (memorandum opinion filed August 7, 1986). On September 2, 1986, the

Trustee received Boyer's distributive share of $4,710.74.

On December 5, 1986 Boyer filed an action in the twenty-seventh judicial district of the Reno County District Court in Kansas, *Boyer v. Chakour,* Case No. 86–C–681, entitled "Petition To Vacate Judgment". He named as defendants the treasurer and a bishop of the NIC–UMC, in their individual and official capacities, and the NIC–UMC. Boyer asked for a reversal of the judgment entered in case 78–P–58 and a writ of impeachment against the defendants for fraud through misrepresentation of fact in that probate action, citing to § 59–2213 of the Kansas Probate Code and § 60–260 of the Kansas Civil Procedure Law. In a subsequent amendment to his complaint, he requested almost $215,000.00 in damages. This action remains pending and in December 1987 was in the discovery stage with no scheduled pretrial conference. Letter from Richard A. Benjes, Esq. to Mary Lannon Fangio, Esq. (Dec. 7, 1987). "[I]f you are intending to wait to close the bankruptcy until after Reno County District Court case no. 86–C–681 is terminated, you may be waiting for several years." *Id.*[1]

Boyer now seeks to remove the two Kansas cases, 78–P–58 and 86–C–681, to this Court. While his papers were originally entitled "Motion On Jurisdiction" when initially filed on December 1, 1987, he filed a "Petition For Removal" on February 9, 1988 with the Bankruptcy Clerk of the Northern District of New York after being informed by the Court in open court that the proper application was one for removal. On February 23, 1988, the Court granted Boyer's motion to extend the time within which to submit related memoranda of law.

Boyer received his bankruptcy discharge by Order entered September 21, 1981.[2]

The Trustee filed a final report and account on April 29, 1987 and the final meeting of creditors originally scheduled for November 17, 1987 was adjourned pending the Court's decision on the instant petition for removal.

## ARGUMENTS

Boyer posits that the removal statute, 28 U.S.C.A. § 1452 (West Supp.1988), is conditioned on the district court in which removal is sought having jurisdiction of the claim or cause of action under 28 U.S.C.A. § 1334. He contends that since subsection (d) of § 1334 vests exclusive jurisdiction of the debtor's property and property of the estate under Code § 541 in the district court where the bankruptcy case is pending and the cases he seeks to remove involve monies found to be property of the estate, the removal petition can only be filed in the Northern District of New York, where the bankruptcy case is pending.

Boyer also appears to take the position that Fed.R.Bankr.P. 9027 is not to be followed where it conflicts with the removal procedure under 28 U.S.C.A. §§ 1441, 1446 and 1447 (West 1973 & Supp.1988) since it would violate 28 U.S.C. § 2075 (West 1982). He seems to argue that his removal petition is timely because 28 U.S.C.A. §§ 1452 and 1334 contain no time provisions and Fed.R.Bankr.P. 9027 is inapplicable given the "two part civil case" commenced three years prior to the bankruptcy filing coupled with the Trustee's conduct within the probate action.

Specifically, Boyer focuses on the language in the second paragraph of 28 U.S.C.A. § 1446(b), regarding a case that is not removable at the initial pleading stage but becomes removable upon the defendant's receipt of "other papers" from which it may first be ascertained that the case is or

---

1. The record also discloses another suit in Kansas District Court, 82–C–570, that Boyer filed in December 1982 against Benjes for his role in the probate action. Its status is unknown but not relevant to the removal petition currently before the Court. Additionally, when the final settlement of his mother's estate was handed down, there had been six related lawsuits filed by or against Boyer, of which all but two, on appeal to the Kansas Court of Appeals by Boyer, were

"completed or dismissed." Journal Entry of Final Settlement, para. 7 (July 25, 1985).

2. An adversary proceeding commenced by the Trustee on January 17, 1983 to revoke his discharge based upon his failure to disclose his interest in his mother's estate in his petition was dismissed on March 9, 1984.

has become removable and that a removal petition in such a situation may be filed within thirty days of the receipt of said other paper. He points to his receipt on January 5, 1988 of a letter dated December 10, 1982 from Benjes to the Trustee (and attached as an exhibit to the Trustee's responding affidavit to his removal application) as the "other paper" or, in the alternative, refers to a "Motion to Correct Appearance Docket in Case 86–C–681 which was set for hearing on January 15, 1988", in Kansas, as the other paper. *Petition For Removal*, 20–21 (Feb. 3, 1988).

Boyer additionally relies on other sections of the repealed Chapter 90 of Title 28, e.g. 28 U.S.C.A. §§ 1471 and 1478 (West Supp.1988), as well as 28 U.S.C.A. §§ 157, 1631 and 1651 (West 1966 & Supp.1988) and Rule 81 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). He cites 28 U.S.C.A. § 1343 (West Supp.1988), 42 U.S.C.A. §§ 1983 and 1985 (West 1981) and various Kansas statutes of evidence and procedure, court rules and the Code of Professional Responsibility, for what he titles the "merit or cause of action laws." *Petition For Removal, supra*, at paras. 9(b), 12.

In opposition, the Trustee states that 28 U.S.C.A. § 1452 and Fed.R.Bankr.P. 9027 direct Boyer to remove his cases to the federal court in Kansas and that if Boyer's cause of action involves 42 U.S.C. §§ 1983 and 1985 only a district court would have jurisdiction pursuant to 28 U.S.C. § 157(b)(5). Furthermore, the Trustee contends that no authority exists for the Court to review the Kansas court determination of the Aldula Boyer estate. The Trustee also notes that the Court's jurisdiction over the property of the Debtors did not preclude his own successful pursuit of Boyer's individual share of his mother's estate so it could be included in property of the estate.

The Trustee asserts that even assuming the cases were removed to the Northern District of New York, the Court would have a problem obtaining personal jurisdiction over Kansas residents. He also claims that there is a final judgment in one action and the other action pending is "nothing more than a collateral attack in the prior action." The Trustee points out that Boyer is attempting to remove a case that he himself filed post-petition in Kansas with full knowledge of his pending bankruptcy case in the Northern District of New York. He notes that the position Boyer is espousing before this Court—that the bankruptcy court in the Northern District of New York is the only court with jurisdiction over the disputed funds—is contrary to the position he took in the Kansas courts, where he did not prevail. The Trustee requests the Court to decline to exercise jurisdiction, allow the federal courts of Kansas to make the removal determination and approve the distribution of the monies relative to his accounting.

Boyer rebuts the Trustee's assertions by insisting that any findings regarding the funds made by the Kansas courts in the probate action, 78–P–58, were based on fraud, misrepresentation and a judicial conspiracy, which he did not become aware of until January 5, 1988. He maintains that as a New Yorker, it is impossible for him to get redress in the Kansas state courts and that the interests of justice and efficiency favor this court of equity "to take care of us here."

In a memorandum of law filed after oral argument, Boyer invokes Code § 105 and 28 U.S.C. § 1651 as authority for the Court to *sua sponte* effectuate "judicial" removal to the Northern District of New York in light of his "clear and certain probable cause of action." *Memorandum Of Law*, 3 (Mar. 21, 1988). He points to the existence of diversity jurisdiction and states that denying removal would rise to a violation of the equal protection amendment. Boyer also appears to concede the inapplicability to removal in bankruptcy of 28 U.S.C.A. § 1446, given its more restrictive procedure, and the applicability of Fed.R.Bankr.P. 9027 as long as the Court "read[s] past the misleading words." *Memorandum of Law, supra*, at 6.

## ISSUE

What is the proper scope and procedure of removal of an action from a state court to a bankruptcy court?

## DISCUSSION

At the outset, the Court acknowledges that pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers", *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), and should be given the benefit of the doubt. *See Munz v. Parr*, 758 F.2d 1254, 1259 (8th Cir.1985); *see also Traguth v. Zuck*, 710 F.2d 90, 93 (2d Cir. 1983). This becomes especially so when interposed within the context of the liberal construction accorded to federal pleadings. *See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957); Fed.R.Civ.P. 8(f).

Nonetheless, the statutory right to self-representation in federal civil actions as authorized by 28 U.S.C.A. § 1654 (West 1966) "does not exempt a party from compliance with relevant rules of procedural and substantive law", however gently these technical rules may be applied. *Traguth v. Zuck, supra*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)); *see, e.g., Doty v. Rochester City Police Dep't*, 625 F.Supp. 829 (W.D.N.Y. 1986). The Second Circuit has also recently refused to give special treatment to a frequent pro se litigator whose own procedural mistakes, albeit inadvertent, resulted in the abrogation of his legal rights. *See Belford v. Martin–Trigona (In re Martin–Trigona)*, 763 F.2d 503, 506 (2d Cir.1985).

█ With this in mind, the Court now turns to the issue at hand. Unique to American jurisprudence, removal is the right "to remove an action properly brought by a plaintiff in one set of courts into another court system for trial." 1A J.W. Moore, B.A. Ringle & J.C. Wicker, MOORE'S FEDERAL PRACTICE § 0.157[1.1] at 33 (2d ed. 1987). If the requirements of the applicable removal statute are satisfied, the right to remove is absolute. *Id.* at § 0.157[1.–3] at 44. It is only after removal that the merits of the cause of action can be reached since removal, like remand and transfer, is procedural. *Cf. Thomasson v. Amsouth Bank, N.A.*, 59 B.R. 997, 1007–1008 (N.D.Ala.1986). Prior to the enactment of the Bankruptcy Re-form Act of 1978, Pub.L. No. 95–598, removal was governed in bankruptcy and non-bankruptcy cases by 28 U.S.C.A. §§ 1441–1447 and authorized the transfer of an action from a state court for a hearing and/or trial in the federal system before a *nisi prius* court exercising original derivative jurisdiction. MOORE'S FEDERAL PRACTICE, *supra*, at § 0.155[1] at 1.

Due to limitations in the existing removal statutes incompatible with the concerns and policies of the bankruptcy laws, Congress enacted, in conjunction with the Code, a broader and more flexible removal statute exclusively for proceedings connected to bankruptcy cases, 28 U.S.C.A. § 1478. *See Paxton Nat'l Ins. Co. v. British Amer. Assoc. (In re Pacor, Inc.)*, 72 B.R. 927, 928–929 (Bankr.E.D.Pa.1987) (citing *Creasy v. Coleman Furniture Co.*, 763 F.2d 656, 661 (4th Cir.1985), *Report of Commission on the Bankruptcy Laws of the United States*, H.R.Doc. 93–137, 93d Cong., 1st Sess., Pt. II, at 33 (1973) and *Pacor, Inc. v. Higgins*, 743 F.2d 984, 991–992 (3d Cir.1984)); *In re World Finan. Serv. Center, Inc.*, 81 B.R. 33, 36–37 (Bankr.S.D.Cal.1987). Providing the bankruptcy court had jurisdiction over what was being removed, 28 U.S.C.A. § 1478 allowed any party unilaterally to file a removal application for any part of a civil action and did not restrict to state court, the forum to be removed from. This was in keeping with the concept that the bankruptcy case would fare best if all matters related to it were adjudicated in one forum.

Since 28 U.S.C.A. § 1446 was part of the general removal scheme which included 28 U.S.C.A. § 1441, and 28 U.S.C. § 1478 contained no time-frame or procedure, Interim Rule 7004 was promulgated, pursuant to 28 U.S.C. § 2075, to provide a bankruptcy removal procedure pending the enactment of nationwide bankruptcy rules. Fed.R. Bankr.P. 9027 became that national rule and basically tracked its interim predecessor in setting forth the removal procedure under 28 U.S.C. § 1478.

In response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598

(1982), which held parts of the Code and Title 28, including § 1478, unconstitutional, Congress passed, *inter alia,* 28 U.S.C. § 1452 as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. The absence of any alteration to Fed.R.Bankr.P. 9027 when § 1452 was enacted and the subsequent 1987 amendments to conform to § 1452 firmly settle the former's status as the bankruptcy removal rule and put to rest any confusion or conflict that might have existed between the statute and the rule. *See Aztec Ind., Inc. v. Standard Oil Co. (In re Aztec Ind., Inc.),* 84 B.R. 464, 469 (Bankr.N.D.Ohio 1987); *In re Pacor, Inc., supra,* 72 B.R. at 930 (pre–1987 amendment rule). *See also Eagle Bend Development,* 61 B.R. 451 (Bankr.M.D.La.1986) (same); *In re Gianakas,* 56 B.R. 747 (N.D. Ill.1985) (same); *In re Philadelphia Gold Corp.,* 56 B.R. 87 (Bankr.E.D.Pa.1985) (same); 1 & 9 L.King, COLLIER ON BANKRUPTCY, §§ 3.01[5][c] & 9027 (15th ed. 1987).

■ Thus, the removal of claims or causes of action related to bankruptcy cases is now governed substantively by 28 U.S.C.A. § 1452(a) and procedurally by Fed.R.Bankr.P. 9027. *See In re World Financial Serv. Corp., supra,* 81 B.R. at 36–39; *Princess Louise Corp. v. Pacific Lighting Leasing Co. (In re Princess Louise Corp.),* 77 B.R. 766, 768–769 (Bankr.C.D.Cal.1987).[3]

Moreover, the majority of courts faced with bankruptcy removal find that applications for removal may be made in the bankruptcy court since the reference to "district court" in 28 § 1452(a) encompasses the bankruptcy courts. *See In re Aztec Ind., Inc., supra,* 84 B.R. at 468 (citing cases). This is grounded in the bankruptcy courts' status as units of the district courts, 28 U.S.C.A. § 151 (West Supp.1988), the presence of the term "clerk" in Fed.R.Bankr.P. 9027 which is defined as "bankruptcy clerk, if one has been appointed, otherwise clerk

of the district court" in Fed.R.Bankr.P. 9001(3) and the general order of reference which all judicial districts in the United States have entered, as authorized by 28 U.S.C.A. 157(a) and recognized by Fed.R. Bankr.P. 9027(f), *Id.; In re Princess Louise Corp., supra,* 77 B.R. at 768. *See also In re Hendersonville Condominium Homes, Inc. v. Contractors Performance Corp.,* 84 B.R. 510 (M.D.Tenn.1988). The Court operates under such a general referral order, handed down by then-Chief United States District Court Judge Howard G. Munson on July 20, 1984. This construction of 28 U.S.C. § 1452(a) is further buttressed by the absence of the term "bankruptcy judge" in 28 U.S.C. § 1452, similar to its absence in 28 U.S.C.A. § 1334 and unlike the presence of both "bankruptcy judge" and "district court" in 28 U.S.C.A. § 157.

■ Boyer appears to have abandoned his position that the time procedures of his removal petition are controlled by the "other paper" provision in 28 U.S.C. § 1446 and instead seems to now invoke the Court's equitable powers under 28 U.S.C. § 1651 and Code § 105(a) to cure any time defects under Fed.R.Bankr.P. 9027. *See Memorandum Of Law, supra.*

■ This Court's exercise of its equitable powers cannot exceed those enumerated under the Code but rather must effectuate them. *See Guerin v. Weil Gotshal & Manges,* 205 F.2d 302, 304 (2d Cir.1953); 2 COLLIER ON BANKRUPTCY, *supra,* at 105–2. *See also Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 968–969, 99 L.Ed.2d 169 (1988). "While the equitable powers emanating from 105(a) are quite important in the general bankruptcy scheme, and while such powers may encourage courts to be innovative, and even original, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v.*

---

**3.** The Court finds any reliance on Boyer's part on 28 U.S.C.A. §§ 1441–1446, Fed.R.Civ.P. 81 or any other rule or statute for removal purposes to be misplaced. "Absent manifest injustice or congressional intent to the contrary, we general-

ly apply the law as it exists at the time the decision is rendered." *Piombo Corp. v. Castlerock Prop. (In re Castlerock Prop.),* 781 F.2d 159, 161 (9th Cir.1986) (citing 3rd, 4th and 5th circuit decisions in support).

*Mabey*, 832 F.2d 299, 302 (4th Cir.1987). Moreover, while Code § 105(c) extends the provisions of Title 28 to bankruptcy judges, "section 105 (or any other title 11 provision) may not be used to expand the court's authority beyond the limits of title 28." 2 COLLIER, *supra*, § 105.06. In this case, the pertinent law—28 U.S.C. § 1452(a) and Fed.R.Bankr.P. 9027—must be followed.

Furthermore, the balance of equities does not tip in Boyer's favor, since he had ample time to file his application subsequent to his own commencement of the 1986 state court action. To find otherwise would be inequitable to the other parties in these proceedings.

The application of the proper statute and rule, 28 U.S.C. § 1452(a) and Fed.R.Bankr.P. 9027, respectively, is fatal to Boyer's removal petition. Boyer is clearly a party to the pre and post-petition civil actions he seeks to remove, neither of which falls into the statute's enumerated exceptions. However, only the action commenced post-petition in 1986, 86–C–681, a civil action independent from the 1978 probate action for removal purposes in that it alleges new facts, *see Barrow v. Hunton*, 99 U.S. 80, 83, 25 L.Ed. 407 (1875); 1A MOORE'S FEDERAL PRACTICE, *supra*, § 0.157[4.–11], is still pending since it has not yet proceeded to trial. With regard to the pre-petition probate action, the Court assumes that the real party in interest, the Trustee, through Benjes, his local counsel, dismissed all pending appeals, as per Benjes' representation when retained. Additionally, Boyer's individual appeal, notwithstanding his lack of standing, was dismissed by the Kansas appellate court and the record is silent on any further properly filed appeals in Kansas on his part. Thus, the post-petition action is the only case of the two "pending" and hence potentially removable. *See Ristuccia v. Adams*, 406 F.2d 1257, 1258 (9th Cir.1969); 1A MOORE'S FEDERAL PRACTICE, *supra*, § 0.157[4.–10].[4]

The Kansas federal district court, which includes the bankruptcy court, encompassing the twenty-seventh judicial district of Reno County, where the 1986 action is pending, is the proper place to file the removal application. *See* 1A MOORE'S FEDERAL PRACTICE, *supra*, § 0.157[8]. This is so notwithstanding other considerations favoring abstention, *see* 28 U.S.C.A. § 1334(c); 1A MOORE'S FEDERAL PRACTICE, *supra*, § 0.157[4.–11] at 113–114; *see, e.g., General Reinsurance Corp. v. Ciba–Geigy Corp.*, 853 F.2d 78, 82 (2d Cir.1988), or those factors to be weighed on subsequent motions to remand or transfer pursuant to 28 U.S.C.A. §§ 1452(b) or 1412 (West Supp.1988). *See, e.g., National Developers, Inc. v. Ciba–Geigy Corp. (In re National Developers Inc.)*, 803 F.2d 616, 620 (11th Cir.1986); *Wes–Flo Inc., v. Wilson Freight Co. (In re Wes–Flo Inc.)*, 13 B.R. 617 (Bankr.S.D.Ohio 1981) (removal properly filed in district where civil action pending but automatic stay in effect until bankruptcy court where bankruptcy petition filed settles venue question since that court has control of case and exclusive jurisdiction of property of the estate); *Wes–Flo Inc., v. Wilson Freight Co. (In re Wes–Flo Inc.)*, 14 B.R. 395 (Bankr.S.D.Ohio 1981) (granting change of venue).[5]

■ Fed.R.Bankr.P. 9027(a)(3) directs that the time for filing a removal petition for this post-petition fraud action is the shorter of thirty days after receipt of the initial pleading or summons. While compliance might at first appear awkward when the removal proponent is the plaintiff in the action sought to be removed, the Court finds that, given 28 U.S.C.A. § 1452(a)'s extension of removal to "a party", an initial pleading includes an answer. Here, almost two years have passed since Boyer's receipt of the defendants' answer in the post-petition state action. *See, e.g., Massachusetts Mutual Life Ins. Co. v. Columbus Broadway Marble Corp. (In re Columbus Broadway Marble Corp.)*, 84 B.R. 322, 326

---

4. Application of the principles of res judicata or collateral estoppel to the two actions is premature at this point.

5. This is not to say that Boyer may not have a valid cause of action that he may commence in

or remove to a district court, based on diversity of jurisdiction or a nonfrivolous federal question, wholly independent of the bankruptcy case in the Northern District of New York. 28 U.S.C.A. §§ 1331, 1332, 1441, 1446.

n. 4 (Bankr.E.D.N.Y.1988). Absent a motion to enlarge the time pursuant to Fed.R. Bankr.P. 9006(b), Boyer cannot now rely on the January 5, 1988 receipt of a letter he claims first informed him of the judicial conspiracy to cure his petition's untimeliness. *See Raff v. Gordon,* 58 B.R. 988, 990 (E.D.Pa.1986) (citing to *Pacor, Inc. v. Higgins, supra,* 743 F.2d at 996 n. 17 (3d Cir.1984)); *In re World Finan. Serv. Center, Inc., supra,* 81 B.R. at 33. This is especially true in the case where, as here, the movant, albeit pro se, is a frequent and vigilant litigator.[6] *See In re Martin–Trigona, supra,* 763 F.2d at 506.

■ Most importantly, with respect to the jurisdictional component of 28 U.S.C.A. § 1452(a) which invokes 28 U.S.C.A. § 1334, the Court notes that the post-petition action to vacate the pre-petition probate action neither "arises in" the bankruptcy case nor "arises under" a right created by a Code provision. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 96–97 (5th Cir.1987). This Court does, however, have "related to" jurisdiction for Boyer's success would impact upon the debtor estate. *See Pacor, Inc. v. Higgins (In re Pacor, Inc.),* 743 F.2d 984, 994–995 (3d.Cir.1984).

The vacating or reversal of the probate action would include all findings made therein, including the findings that Boyer's one-fifth interest in his mother's estate is property of the bankruptcy estate, Boyer's lack of standing in the probate action and that the assignment to the Special Appointment Fund was invalid due to the Fund's invalidity as a religious trust. Thus, even though this action was instituted by Boyer individually, its outcome could conceivably affect the distribution of the property of the debtor estate in that the Trustee might be required to disgorge the approximately $4,700.00 he received in September 1986 from the distribution of the Aldula Boyer

estate. *See, e.g., Elscint, Inc. v. First Wisconsin Finan. Corp. (In re Xonics, Inc.),* 813 F.2d 127, 131 (1st Cir.1987).

Despite this "related jurisdiction", there is no clash between 28 U.S.C.A. §§ 1452 and. 1334(d) since the property of the estate—the disputed monies—is currently being held by the Trustee pending distribution to creditors and thus is within the jurisdiction of this Court. The post-petition action Boyer seeks to remove is not property of the estate; it is an action that belongs to the Debtor, Boyer, alone for it did not exist at the commencement of his filing in May of 1981. Code § 541(a)(1). That the outcome of that independent action might trigger the Court's exclusive jurisdiction over the Kansas litigation sometime in the future is too speculative for the purposes of its exercise at this juncture.

No question was raised· about this Court's exclusive jurisdiction over the property of the estate pursuant to 28 U.S.C.A. § 1334(d) until now, nor was the applicability of the automatic stay under Code § 362 to Boyer's interest in the probate action ever advanced. In fact, in his answer to the Trustee's adversary to revoke his discharge and in all the litigation up to this point, Boyer has maintained that the disputed monies from his mother's estate were *not* under the jurisdiction of this Court.[7]

■ The Court also observes that normally a court does not pass on an application for removal because if the pertinent statute and rule are satisfied, the removal is automatic. "Removal of the claim or cause of action is effected on such filing [with the clerk of the court from which the claim or cause of action is removed] of a copy of the removal application." Fed.R. Bankr.P. 9027(d). *See In re Philadelphia Gold, Corp., supra,* 56 B.R. at 90. It is only on a motion for remand *after* removal

---

6. Aside from the state court actions he is involved in, *see supra* note 1, Boyer has, at last count, made six motions before this Court and commenced one adversary proceeding within the underlying bankruptcy case.

7. Additionally, the Court has been kept informed about the Kansas litigation from the time it came to the Trustee's attention. In approving Benjes' appointment as special counsel

and in subsequent litigation where, *inter alia,* Boyer unsuccessfully sought the rescission of that appointment, the Court has, in effect, approved the Trustee's pursuit of this property in Kansas state court. Indeed, the closing of the seven year old bankruptcy case appears to hinge on the resolution in Kansas of this litigation surrounding the probate action.

is accomplished that judicial approval is necessary and when any alleged removal defects can be addressed. *See* 28 U.S.C.A. § 1452(b); *Thomasson v. Amsouth Bank, N.A., supra,* 59 B.R. at 997; *In re Princess Louise Corp, supra,* 77 B.R. at 771. Thereafter, the removed or remanded claim can proceed on the merits, assuming there are no other procedural issues to resolve. However, a petition to remove a claim to a bankruptcy court that is filed in the wrong court, as here, has no effect either on the actions sought to be removed or the bankruptcy case, irrespective of any other obstacles that may exist.

By reason of the foregoing, it is hereby ORDERED:

1. That Boyer's petition for removal is denied and dismissed.

2. That the final meeting of creditors is adjourned pending the disposition of the adversary proceeding commenced on March 16, 1988 by Boyer.